# DELANO FITZGERALD JAMES

## v.

# COMMONWEALTH OF VIRGINIA

Record No. 931210

April 15, 1994

Present: Carrico, C.J., Compton, Stephenson, Whiting, Lacy, and Hassell, JJ., and Poff, Senior Justice

*Sa'ad El-Amin (El-Amin & Crawford,* on brief), for appellant.
*Leah A. Darron, Assistant Attorney General (Stephen D. Rosenthal, Attorney General,* on brief), for appellee.

JUSTICE LACY delivered the opinion of the Court.

Delano Fitzgerald James was convicted by a jury in the Circuit Court of the City of Richmond of possession of cocaine with intent to distribute. He was sentenced to forty years' imprisonment with execution of ten years suspended and was fined $100,000. James appealed his conviction, arguing that the Commonwealth used its peremptory strikes to remove two African-American veniremen from the jury panel for racially based reasons in violation of *Batson v. Kentucky,* 476 U.S. 79 (1986). The Court of Appeals, in an unpublished opinion, affirmed James's conviction, holding that the Commonwealth's reasons for striking the two veniremen were race-neutral and, therefore, the trial court did not err in overruling James's *Batson* challenge. We awarded James an appeal and, for the reasons stated below, we will affirm.

Following questioning of the jury panel, James and the Commonwealth used their peremptory strikes and eight members of the panel were excused. At least four African-Americans remained on the panel. Pursuant to *Batson,* James, an African-American, challenged the Commonwealth's strikes of Willie Blount and William Johnson, two African-American veniremen, arguing that neither had responded to any of the Commonwealth's questions in a manner that would justify striking him from the jury panel. The Commonwealth immediately responded that Willie Blount was excused because of his possible familial relationship with an 18-year old individual named John Blount who had been charged with murder. As stated by the Commonwealth:

> Mr. Blount indicated that he, in fact, does have a relative by the name of Johnny Blount. My concern is that there may be no, in fact, relationship. I can't tell that. I, when faced with a choice

between striking the jurors who are not bearing the same name or have relatives of that name involved in murder, I elect [not to choose] people that may be associated with murder.

The murder case will literally be set at docket call tomorrow against John Blount. But I am here faced with the decision whether to believe this juror or to strike him out of caution.

The Commonwealth also pointed out that it struck Ivory Burchette, a Caucasian member of the venire, because she had a relative who had been prosecuted for a drug offense.

Johnson was struck, the Commonwealth explained, because he was a nursing assistant, an occupation whose members might be more sympathetic than persons in other professions. Additionally, the Commonwealth noted that Johnson was wearing a crucifix that was approximately two inches in length. Wearing this visible religious symbol also was indicative of a sympathetic disposition which, the Commonwealth stated, was "a consideration, whenever you ask a jury member to incarcerate anybody."

In response, James argued that these explanations were insufficient. He pointed out that the Commonwealth did not strike Ruby Rhodes, a Caucasian juror, who was an occupational therapy aide, an occupation which James argued "sounds more sympathetic." James also noted that Mr. Blount did not answer any of the Commonwealth's questions in the negative and that the Commonwealth did not adequately attempt to determine whether Mr. Blount was actually related to the murder suspect.

After hearing the Commonwealth's reasons for striking the two veniremen in question and James's argument regarding those reasons, the trial court concluded that the Commonwealth's use of its peremptory strikes to remove the two African-American veniremen was not motivated by racial discrimination and did not violate *Batson*.

The principles applicable to challenges of racial motivation for the exercise of peremptory strikes on a jury panel initially were set out in *Batson* and subsequently have been refined. The defendant must make a *prima facie* showing that the prosecutor has exercised peremptory strikes on the basis of race. *Powers v. Ohio,* 499 U.S. 400, 409 (1991). If this showing is made, the burden shifts to the prosecutor to articulate a racially neutral explanation for striking the jurors in question. *Batson,* 476 U.S. at 96-97. If the court determines that the proffered reasons are race-neutral, the defendant should be afforded an opportunity to show why the reasons, even though facially race-neutral, are merely pretextual and that the chal-

lenged strikes were based on race. *United States v. Joe,* 928 F.2d 99, 103 (4th Cir. 1991). But, ultimately, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. *Batson,* 476 U.S. at 98. On appeal, the trial court's findings will not be reversed unless they are clearly erroneous. *Hernandez v. New York,* 500 U.S. 352, ___, 111 S.Ct. 1859, 1871 (1991).

In this case, we will assume the defendant established a *prima facie* case of discrimination. *Id.* at ___, 111 S.Ct. at 1866. James does not question the facial race neutrality of the reasons given by the Commonwealth in this case. James argues, however, that the trial court erred because it did not explicitly engage in a determination of whether these reasons were pretextual and, therefore, the trial court's conclusion that the reasons were race-neutral was clearly erroneous. We disagree.

The importance of meaningful review of proffers made by both the defendant and the prosecution at each step of a *Batson* challenge cannot be understated. Nevertheless, often the actual sequence of events at trial merges the separate procedural steps as well as the determinations required of a court. For example, in this case, the trial court did not determine whether James made a *prima facie* case of dis-crimination because the prosecution offered its rationale without prompting by the trial court. So, too, the trial court did not specifically determine whether the rationale was race-neutral on its face prior to the defense's presentation of its arguments that the reasons given were pretexts for racially motivated peremptory strikes.

Consolidation of various steps does not invalidate the process as long as the consolidation does not adversely impact the rights of any party. Here, each party had an opportunity to fully present its posi-tion to the trial court. Contrary to James's assertion, the trial court was able to conduct a full review of the parties' respective positions. In ruling that the reasons proffered by the Commonwealth were race-neu-tral, the trial court implicitly rejected James's arguments that the rea-sons were merely pretextual.

Furthermore, we find nothing in the record to support a conclu-sion that the findings of the trial court in this regard were clearly erro-neous. The Commonwealth struck both members of the venire whom it believed were or could be related to persons with serious criminal convictions or charges pending against them. The similarity between the name of the man charged with murder, John Blount, and that of Willie Blount's relative, Johnny Blount, was sufficient to raise a legiti-

mate question as to a possible relationship between venireman Blount and the accused murderer.

The Commonwealth expressed its concern over jurors perceived to be sympathetic to persons facing possible incarceration. Acting on this concern, the Commonwealth struck Johnson, whose employment and visible display of a religious symbol reinforced the perception of such sympathy. This combination of factors distinguished Johnson from the other members of the venire.*

Accordingly, for the reasons stated, we will affirm the judgment of the Court of Appeals.

*Affirmed.*

JUSTICE HASSELL, dissenting.

I dissent because the prosecutor exercised one of his peremptory strikes to remove an African-American from the venire on the bases of race and religion. Racial and religious discrimination are repugnant to the laws and morals of any democratic society, and such discrimination should never be countenanced by the judiciary.

I believe that the reasons advanced by the prosecutor for removing William Johnson, an African-American, from the venire are pretextual and that the prosecutor exercised his peremptory strike in a racially discriminatory manner. The prosecutor stated that he exercised his peremptory strike to remove Johnson from the venire because Johnson is a nursing assistant, and he was wearing a visible religious symbol, a crucifix. However, the prosecutor did not remove from the venire a Caucasian female, Ruby Rhoads,** who is an occupational therapy aide. Both Johnson and Rhoads are employed in health-related professions, and the only distinctions between Johnson and Rhoads are that Johnson is an African-American who was wearing a crucifix.

At trial, the prosecutor stated that:

[Johnson was] wearing a crucifix in front of his clothing and [it was] dangling around. A silver crucifix about 2 inches in size.

---

* James's argument that to strike an individual on the basis of a visible religious affinity implicates the First and Fourteenth Amendments to the United States Constitution was not raised at trial, and we cannot consider it here. Rule 5:25.

** There appears to be some confusion in the record regarding the correct spelling for this name. In the appendix and in the unpublished opinion of the Court of Appeals, her name appears as Ruby Rhoads. However, the record contains a list of names on a yellow sheet of paper, and, on that list, her name appears as Ruby Rhodes.

Obviously, he has very religious affiliations. He may be, once again, more sympathetic than these other jury members who I can't see any crucifixes dangling on them. It's a consideration, whenever you ask a jury member to incarcerate anybody.

On brief, the Commonwealth asserts that "[t]he prosecutor believed that Johnson, because of his occupation and religious beliefs, might be more sympathetic to the defendant, particularly with respect to incarceration." In its opinion, the majority states:

> The Commonwealth expressed its concern over jurors perceived to be sympathetic to persons facing possible incarceration. Acting on this concern, the Commonwealth struck Johnson, whose employment and visible display of a religious symbol reinforced the perception of such sympathy. This combination of factors distinguished Johnson from the other members of the venire.

I find the majority's explanation very troublesome. As stated previously, Johnson's employment did not and could not distinguish him from Rhoads, and the majority tries to gloss over this significant point. As I read the majority's explanation, a Christian who wears a cross, a Jew who wears a Star of David or a yarmulke, or a Muslim who wears a crescent and star, may be removed from a jury and, thereby, discriminated against on the basis of religion.

The majority's conclusion, which approves the practice of religious discrimination in our courts, contravenes the First and Fourteenth Amendments of the United States Constitution. *See Church of Lukumi Babalu Aye* v. *City of Hialeah*, ___ U.S. ___, ___, 113 S. Ct. 2217, 2226-27 (1993). Furthermore, the majority's legal conclusion violates Article I, § 16 of the Constitution of Virginia, which guarantees the free exercise of religion, and violates Article I, § 11 of the Constitution of Virginia, which prohibits governmental discrimination on the basis of religious conviction or race.

Religious discrimination is just as abhorrent as discrimination based upon race or gender, and, quite candidly, I am at a loss to explain or understand the majority's rationale. Certainly, the Supreme Court of Virginia ought not condone religious discrimination practiced in the courts of this Commonwealth, particularly in light of Virginia's historical role in the development of the constitutional right of free exercise of religion.