COURT OF APPEALS OF VIRGINIA

Present:  Judges Bumgardner, Felton and Senior Judge Overton
Argued at Chesapeake, Virginia


JEROME A. BEALE

MEMORANDUM OPINION[*] BY
v.    Record No. 1252-02-1          JUDGE WALTER S. FELTON JR.
                                          APRIL 29, 2003
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
D. Arthur Kelsey, Judge

Felipita Athanas, Appellate Counsel
(S. Jane Chittom, Appellate Defender;
Public Defender Commission, on briefs), for
appellant.

Amy L. Marshall, Assistant Attorney General
(Jerry W. Kilgore, Attorney General, on
brief), for appellee.


Jerome A. Beale was convicted by a jury of marital rape, in

violation of Code § 18.2-61(B)(i).[1]  On appeal, Beale contends

the trial court erred in (1) holding that the Commonwealth's

peremptory strikes of potential jurors did not violate his

constitutional rights under Batson v. Kentucky, 476 U.S. 79

---

    * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

    [1] In 2002, subsequent to Beale's conviction, Code
§ 18.2-61(B) was amended.  The General Assembly deleted the
second paragraph, which read:  "However, no person shall be
found guilty under this subsection unless, at the time of the
alleged offense, (i) the spouses were living separate and apart,
or (ii) the defendant caused bodily injury to the spouse by the
use of force or violence."

(1986), and (2) admitting evidence of his prior conduct arising out of an offense of which he had been previously acquitted. Finding no error, we affirm the judgment of the trial court.

## I. BACKGROUND

### A. OFFENSE

Jerome Beale and Alicia Smith Beale, husband and wife, separated in May 2001. On September 1, 2001, an enraged Beale unexpectedly appeared at Mrs. Beale's residence as she prepared to leave with her children. When he arrived, his eyes were bulging, he was cursing, and he demanded to know why she was ignoring his phone calls. Mrs. Beale became frightened and drove away. Later that day, at Beale's request, Mrs. Beale dropped their children off at the barracks where he was living. She then visited her cousin until 3:00 a.m.

Upon returning to her residence, Mrs. Beale was met by Beale. He yelled and cursed at her, calling her a "bitch," a "slut" and a "whore." He insisted on knowing where she was earlier that evening and instructed her to get out of the car. Beale eventually calmed down, and Mrs. Beale got out of the car. As they entered the house, Beale "snapped." He grabbed Mrs. Beale's arm, and led her into the master bedroom. Beale punched and choked Mrs. Beale for twenty to thirty minutes while repeatedly calling her vulgar names.

Beale then dragged Mrs. Beale by her hair into her son's room. He instructed her to sit in the corner and struck her

-

every time she attempted to move. At one point Beale left the bedroom and went into the den. He found Mrs. Beale's purse and rifled through it. While Beale rifled through her purse, Mrs. Beale stood up and attempted an escape. Beale saw her, picked up a stereo speaker, and threatened to "bash [her] face in" if she moved again.

Shortly thereafter, Beale insisted that Mrs. Beale leave with him in the car. She testified that she did not want to go but believed he would beat her if she refused. He grabbed her arm, led her out of the house, and put her into the rear passenger seat of the car. Mrs. Beale asked Beale to pick up their children, but he refused. He instead drove to a back area of the Tidewater Community College campus. He told Mrs. Beale to get into the front seat and threatened to beat her if she did not obey. Beale then ordered her to remove her clothes. She initially refused, but eventually complied to avoid further physical harm. Mrs. Beale did not fight when Beale removed her pants and underwear. Beale proceeded to have sexual intercourse with Mrs. Beale without her consent.

After having sexual intercourse with her, Beale eventually brought Mrs. Beale back to her residence. Upon arriving at the house, Beale repeatedly asked her if she intended to call the police. He followed Mrs. Beale inside the residence and removed the two phones. As soon as Beale left, Mrs. Beale ran next door and contacted the police.

-

## B.  PRETRIAL MOTION

Prior to the trial, Beale sought through a motion in limine to exclude evidence on related offenses arising out of the same course of conduct.[2]  The court denied the motion and found that the conduct within the twenty-four-hour period immediately before the alleged marital rape was relevant to (1) the state of mind of the victim at the time the intercourse took place, (2) the degree of force to be demonstrated in the Commonwealth's case, and (3) Beale's assertion that the intercourse was consensual.

## C.  JURY SELECTION

During jury selection, the Commonwealth used its peremptory challenges to strike four African-American women from the venire, Ms. Bailey, Ms. Twine, Mrs. Bowden, and Ms. Morgan. Beale objected that the strikes violated Batson v. Kentucky, 476 U.S. 79 (1986).  Pursuant to Batson, the court requested that the Commonwealth state the reasons for each of its strikes.

The Commonwealth stated that Ms. Bailey was struck from the venire because "she was looking up and did not seem to be fixated on the [j]udge."  Beale's attorney responded that inattentiveness "could be said . . . about just about every

---

[2] Beale was previously convicted by a jury of assault and battery for striking Mrs. Beale while in her residence that night.  He was acquitted by the same jury of the charge of abduction with intent to defile, which also stemmed from his conduct during the early hours of September 2, 2001.

juror."  The Commonwealth reiterated its desire for attentive
jurors.  The trial court concluded that inattentiveness is a
satisfactory explanation under Batson and that Beale had not
rebutted the proffered reason as pretextual.  The trial court
ruled that striking Ms. Bailey from the venire did not violate
Batson.

As to the reason Ms. Twine was struck from the venire, the
Commonwealth stated:

> Ms. Twine looked down several times,
> especially when [the court] [was] asking a
> question as to whether any juror has any
> predisposition towards the guilt or
> innocence of the defendant.  She looked
> around, she was not fixated on [the court's]
> questions and on [the court's] recitation.
> It started there and it seemed to go through
> the recitation at various intervals.

Beale's attorney argued that he did not notice the alleged
inattentiveness.  In addition, he requested that the jurors be
brought back before the court and questioned to determine
whether they were paying attention.  The court denied the
request and held that "there is no due process right to an
individual voir dire examination post-Batson request when the
proffered reason for the strike is demeanor and
inattentiveness."

Regarding the reason Mrs. Bowden was struck from the
venire, the Commonwealth explained:

> Throughout the proceedings she was the least
> attentive juror.  At various times she had
> her eyes closed through many of the

-

questions.  When I asked questions, when Mr. Parnell asked questions, and when the [c]ourt was going through the directions.  In addition, she sighed when [the court] [was] specifically asking about any knowledge about the case from the press.

Her lack of attentiveness went way beyond the first two.  But it was enough that I noted three or four places when her eyes were simply closed during the time that anyone was talking.

Beale's attorney noted that Mrs. Bowden was the third African-American female that the Commonwealth was claiming to be inattentive.  He again stated that he failed to notice any inattentiveness.  The trial judge noted that he too "did not notice attentive [sic] or lack of attentiveness," but that he "wasn't looking for it the way [the parties] were looking for it."  The court denied the motion as to Mrs. Bowden and found that the Commonwealth's explanation for striking her was proper under Batson.

The Commonwealth's fourth peremptory strike, Ms. Morgan, is not a subject of this appeal.[3]

## II.  BATSON CHALLENGE

We first consider whether the trial court erred in holding that the Commonwealth's peremptory strikes of potential jurors

---

[3] The Commonwealth struck Ms. Morgan based on a 1976 charge of larceny.  The Commonwealth planned to impeach one of Beale's witnesses based on a larceny conviction from the same time period.  The Commonwealth felt that if it impeached or attacked the witness on the larceny conviction that Ms. Morgan might be biased.

-

did not violate Beale's constitutional rights under Batson.
Beale contends that the trial court failed to make a finding
that the reasons offered by the Commonwealth for its peremptory
strikes were race-neutral.  We find no error in the trial
court's determination that the strikes were race-neutral and
that there was no discriminatory intent in the Commonwealth's
peremptory strikes.

### A.   STANDARD OF REVIEW

The Equal Protection Clause precludes a prosecutor from
excluding otherwise qualified and unbiased potential jurors
solely on the basis of their race.  Batson, 476 U.S. at 84.
Under Batson,

> [t]he defendant must make a prima facie
> showing that the prosecutor has exercised
> peremptory strikes on the basis of race.
> Powers v. Ohio, 499 U.S. 400, 409, 111
> S. Ct. 1364, 1370, 113 L.Ed.2d 411 (1991).
> If this showing is made, the burden shifts
> to the prosecutor to articulate a racially
> neutral explanation for striking the jurors
> in question.  Batson, 476 U.S. at 96-97, 106
> S. Ct. at 1722-23.  If the court determines
> that the proffered reasons are race-neutral,
> the defendant should be afforded an
> opportunity to show why the reasons, even
> though facially race-neutral, are merely
> pretextual and that the challenged strikes
> were based on race.  United States v. Joe,
> 928 F.2d 99, 103 (4th Cir. 1991).  But,
> ultimately, the trial court must determine
> whether the defendant has carried his burden
> of proving purposeful discrimination.
> Batson, 476 U.S. at 98, 106 S. Ct. at 1724.

James v. Commonwealth, 247 Va. 459, 461-62, 442 S.E.2d 396, 398
(1994).  A trial court's decision on the ultimate question of

-

discriminatory intent represents a finding of fact that is accorded great deference on appeal and will not be disturbed unless clearly erroneous.  Barksdale v. Commonwealth, 17 Va. App. 456, 460, 438 S.E.2d 761, 763 (1993) (citing Hernandez v. New York, 500 U.S. 352, 364, 368 (1991)).

### B.   PRIMA FACIE EVIDENCE OF DISCRIMINATION

In the present case, the Commonwealth exercised its peremptory strikes to remove four African-American females from the venire.  Beale objected to and challenged the strikes, contending the women were purposefully removed on the grounds of their race.[4]  Pursuant to Batson, Beale was required to make a prima facie showing that the Commonwealth made the peremptory strikes on the basis of race.  However, that showing did not occur.  Immediately upon Beale's objection, the trial judge requested the Commonwealth to articulate the reasons for the strikes.

Although the trial court did not explicitly make a finding that the prima facie case had been established, "often the actual sequence of events at trial merges the separate procedural steps" incidental to a Batson challenge and analysis. James, 247 Va. at 462, 442 S.E.2d at 398.  This "[c]onsolidation of various steps does not invalidate the process as long as the

---

[4] Beale did not pursue the issue of gender as grounds for attacking the Commonwealth's peremptory strikes of the four African-American women.  Therefore we will not address that issue on appeal.

-

consolidation does not adversely impact the rights of any party." Id. Both Beale and the Commonwealth were afforded the opportunity to explain their respective positions and address arguments forwarded by the opposing party. Neither party's rights were adversely affected by the trial judge's decision to combine separate steps of the Batson process.

### C. RACIALLY NEUTRAL EXPLANATION

"'In evaluating the race-neutrality of an attorney's explanation, a court must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law.'" Barksdale, 17 Va. App. at 459, 438 S.E.2d at 763 (quoting Hernandez, 500 U.S. at 359). "If the explanation is constitutionally acceptable, the 'decisive question' before the trial judge then becomes 'whether counsel's . . . explanation . . . should be believed.'" Robertson v. Commonwealth, 18 Va. App. 635, 639, 445 S.E.2d 713, 715 (1994) (quoting Hernandez, 500 U.S. at 365). Once that has been settled, there seems nothing left to review. Id. (citing Hernandez, 500 U.S. at 367).

In the instant case, the Commonwealth presented the trial court with ample evidence for it to make a finding that each of the peremptory strikes exercised by the Commonwealth against the three African-American potential jurors was race-neutral. The Commonwealth identified varied and specific behavior on the part

-

of each stricken juror that was indicative of inattentiveness. In Robertson, we held that "[m]anifestly, disinterested jurors should be identified and removed whenever possible, irrespective of race or gender." Id. at 640, 445 S.E.2d at 716. Inattentiveness is a valid race-neutral reason for a peremptory strike.

In explaining its reasons for striking each of the three women, the Commonwealth explained first that Ms. Bailey "was looking up and did not seem to be fixated on the [j]udge." Ms. Twine, on the other hand, "looked down several times" and was looking around during the court's questions and recitation. Finally, the Commonwealth explained that Mrs. Bowden had her eyes closed through many of the court's questions and "she sighed when [the court] [was] specifically asking about any knowledge about the case from the press."

For each of the stricken jurors, the trial court made a sufficient finding that the Commonwealth's reason for striking the juror was race-neutral. In addressing the peremptory strike of Ms. Bailey, the trial court made the finding that

> assertions of inattentive demeanor and other demeanor observations which reflect that a potential juror is not concentrating or paying attention are satisfactory explanations under Batson unless there is some way to rebut the proffered reason is pretextual, so I'd deny the motion, and finding none, I will deny the motion with respect to Ms. Bailey.

(Emphasis added).

-

Regarding Ms. Twine, the trial court found that "[it] should assume _in the absence of any rebutting evidence_ that it was an appropriate strike, so I'll deny the _Batson_." (Emphasis added).

Finally, with regards to Mrs. Bowden, the trial court found that "the explanation given is a proper proffered explanation under the _Batson_ precedent, and _the response is not sufficient_ to render it . . . a pretextual reason." (Emphasis added).

Based on varied descriptions of inattentiveness articulated to the trial court, and the insufficient response by Beale to render the explanations pretextual, the trial court properly determined the explanations to be race-neutral.

### D. PIERCING THE RACE-NEUTRAL REASON

Beale attempted to pierce the Commonwealth's racially neutral reason for the peremptory strikes by stating that he had not observed any inattentiveness from the three jurors. He also argued that _if_ they had exhibited any signs that they were not paying attention, it is likely that white members of the venire had appeared equally inattentive. However, Beale did not present any evidence of inattentiveness of other potential jurors. Beale requested that the court allow questioning of the venire to determine whether the challenged jurors were paying attention. However, the trial judge denied the request, and Beale has conceded that additional _voir dire_ would be procedurally incorrect.

-

The trial court is uniquely able to assess the genuineness of prosecutors' justifications of their peremptory strikes and to determine whether an underlying discriminatory motivation exists. Finding no clear error in the record before us, we will affirm the judgment of the trial court. Winfield v. Commonwealth, 12 Va. App. 446, 453, 404 S.E.2d 398, 402 (1991), aff'd en banc, 14 Va. App. 1049, 421 S.E.2d 468 (1992).

### III. COLLATERAL ESTOPPEL AND PRIOR BAD ACTS

We next consider whether the trial court erred in admitting evidence of Beale's conduct prior to the marital rape, evidence previously admitted in the trial of an offense of which he was acquitted by a jury. Beale contends that the Commonwealth is precluded from introducing evidence of his acts prior to the marital rape on the grounds of collateral estoppel. We find no error.

### A. COLLATERAL ESTOPPEL

Beale asserts that the trial court erred in admitting evidence used in the prior trial because the jury acquitted him of abduction with the intent to defile. We disagree.

It is "'usually impossible to determine with any precision upon what basis the [fact finder] reached a verdict in a criminal case,' leaving the defense of collateral estoppel available to an accused only in 'a rare situation.'" Ramadan v. Commonwealth, 28 Va. App. 708, 714-15, 508 S.E.2d 357, 360

-

(1998) (quoting Jones v. Commonwealth, 217 Va. 231, 233, 228 S.E.2d 127, 128-29 (1976)). "'The party seeking the protection of collateral estoppel carries the burden of showing that the verdict in the prior action necessarily decided the precise issue he now seeks to preclude.'" Id. at 714, 508 S.E.2d at 360 (quoting Rogers v. Commonwealth, 5 Va. App. 337, 341, 362 S.E.2d 752, 754 (1987)).

Beale concedes that the jury in the previous trial could have reached an acquittal on either the element of force or of the intent to defile. He cannot say with specificity which issue was decided.

> Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this [realistic and rational] approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration."

Jones, 217 Va. at 233, 228 S.E.2d at 129 (quoting Ashe v. Swenson, 397 U.S. 436, 444 (1970)).

The burden is on Beale to provide this Court with a record that supports his claim of error. Kerr v. Commonwealth, 35 Va. App. 149, 151, 543 S.E.2d 612, 613 (2001). Since Beale failed to prove that the prior proceeding necessarily decided the issue he seeks to foreclose, we find that collateral estoppel did not bar the admission of the evidence regarding

-

Beale's conduct during the period leading up to the marital rape.

## B.   PRIOR BAD ACTS

The trial court did not abuse its discretion when it allowed the jury to hear evidence of Beale's conduct that occurred prior to the marital rape.  As a general rule, evidence that shows or tends to show crimes or other bad acts committed by the accused is inadmissible for the purpose of proving that the accused committed the particular crime charged.  Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970).  "[Evidence of prior crimes] merely show[s] that [an accused] has the propensity to commit the crime [charged] and this inference has been held error because it reverses his presumption of innocence."  Spence v. Commonwealth, 12 Va. App. 1040, 1045, 407 S.E.2d 916, 918 (1991) (citing Lewis v. Commonwealth, 225 Va. 497, 502, 303 S.E.2d 890, 893 (1983)).  Its admissibility is error.

"'There are, however, well-established exceptions to the general rule.'"  Mughrabi v. Commonwealth, 38 Va. App. 538, 545, 567 S.E.2d 542, 545 (2002) (quoting Cheng v. Commonwealth, 240 Va. 26, 34, 393 S.E.2d 599, 603 (1990)).  "'If the evidence of other conduct is connected with the present offense, or tends to prove any element or fact in issue at trial, it should be admitted, whether or not it tends to show the defendant guilty of another crime.'"  Parnell v. Commonwealth, 15 Va. App. 342,

-

348, 423 S.E.2d 834, 838 (1992) (quoting Scott v. Commonwealth, 228 Va. 519, 527, 323 S.E.2d 572, 577 (1984)).

Beale's prior conduct was clearly interwoven with the crime of marital rape. During the time period leading up to the marital rape, Beale at all times asserted control over Mrs. Beale. He repeatedly hit her when she tried to escape. He grabbed her arm, pulled her to the car, and placed her in the back seat. Beale drove Mrs. Beale to a place she did not wish to go and threatened physical violence to get her into the front seat, where the marital rape occurred.

In addition to this conduct being interwoven with the crime, the evidence of Beale's prior acts of repeated violence against Mrs. Beale, within the twenty-four hours leading up to the time of the marital rape, and his asportation of her against her will to a secluded area bears on Mrs. Beale's state of mind and the likelihood that sexual intercourse was not consensual.

In Morse v. Commonwealth, 17 Va. App. 627, 440 S.E.2d 145 (1994), Morse was charged with marital sexual assault. Mrs. Morse testified at trial about eight to twelve incidents over an unspecified period of time when Morse acted violently towards her in demanding sexual intercourse. He objected to the admission of the testimony, arguing that the testimony offered in that instance lacked specificity in detail and adequate proximity in time to the crime charged. The trial court overruled his objection and allowed the testimony into evidence.

-

On appeal, this Court held that the accused's prior threats and violence towards his wife "tend[ed] to prove that the intercourse in question was accomplished by conduct that was tantamount to a present threat of force by [the accused] against [his wife]." Id. at 632, 440 S.E.2d at 148.

Beale's beating and forcible taking of Mrs. Beale against her will to a remote area is analogous to the conduct in Morse. However, in this case the temporal nexus between Beale's violence and the commission of the marital rape is closer. Here, the violence occurred within hours of the sexual intercourse, as opposed to weeks before. See Collins v. Commonwealth, 226 Va. 223, 230, 307 S.E.2d 884, 888 (1983) (remoteness in time is a consideration for determining probative value of the other bad acts). Beale's conduct leading up to the intercourse tended to prove that he used a present threat of force against his wife to consummate an act of non-consensual intercourse.

Beale's prior bad acts were also important in establishing his state of mind toward Mrs. Beale. In Sutphin v. Commonwealth, 1 Va. App. 241, 245, 337 S.E.2d 897, 899 (1985), we held that evidence of prior crimes or bad acts may be admissible "to show the conduct and feeling of the accused towards his victim, or to establish their prior relations . . . ." In the case at bar, Beale's conduct just

-

hours before the sexual intercourse tends to prove his animus toward Mrs. Beale at the time of the marital rape.

"'"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion."'" Ricks v. Commonwealth, 39 Va. App. 330, 334, 573 S.E.2d 266, 268 (2002) (quoting Summerlin v. Commonwealth, 37 Va. App. 288, 293, 557 S.E.2d 731, 734 (2002) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988))).  The trial judge did not abuse his discretion when he allowed the jury to hear evidence of Beale's prior conduct leading up to the marital rape.  That evidence was closely related to the offense charged. Further, it tended to prove (1) the state of mind of the victim at the time the intercourse took place, (2) the degree of force to be demonstrated in the Commonwealth's case, (3) that it was less likely that the sexual intercourse was consensual, and (4) Beale's state of mind.[5]  An accused is not entitled "to have the evidence 'sanitized' so as to deny the jury knowledge of all but the immediate crime for which he is on trial."  Jones v.

---

[5] Although the trial judge stated he would give a cautionary instruction on this issue to the jury, Beale had the responsibility of submitting the jury instruction to the court. He failed to do so.  "The court was not required to give such an instruction sua sponte."  Manetta v. Commonwealth, 231 Va. 123, 127 n.2, 340 S.E.2d 828, 830 n.2 (1986) (though trial judge offered to give a limiting instruction, Manetta made no such request for tactical reasons).

-

Commonwealth, 32 Va. App. 30, 41, 526 S.E.2d 281, 286 (2000) (quoting Scott, 228 Va. at 526-27, 323 S.E.2d at 577).

Accordingly, we affirm the judgment of the trial court.

Affirmed.