**Alexandria**

JAVIER ANTONIO MERY

v.

COMMONWEALTH OF VIRGINIA

No. 0523-89-4

Decided July 1, 1991

COUNSEL

James B. Slaughter, Senior Assistant Public Defender (Diane M. Wells, Assistant Public Defender, Office of the Public Defender, on briefs), for appellant.

Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KEENAN, J.**—Javier Mery was convicted by a jury of rape. In this appeal, he contends that the trial court erred in refusing his request for a jury instruction on the issue of consent. We find that under the evidence presented, consent was a principle of law vital to Mery's defense, and therefore, the trial court erred in refusing to instruct the jury specifically on this subject.

The evidence at trial showed that Mery and the prosecutrix were employed at the Sheraton Premiere Hotel in Fairfax County. Mery worked as a security guard on the night shift. The prosecutrix worked as a maid during the same shift. Although it was against the rules to do so, the employees on the night shift often used guest rooms for the purposes of watching television and resting. On August 22, 1988, Mery asked the prosecutrix if she wanted to rest in one of the rooms. She agreed, and they were joined by another employee, Alberto Rojas.

The prosecutrix testified that she laid down on one of the twin beds, while Mery rested on the other, and Rojas sat in a chair. The prosecutrix further testified that Mery turned on the television, after which she fell asleep. When she awoke, she found Mery on top of her. Rojas was not in the room. The prosecutrix testified that, although she screamed and struggled, she was unable to prevent Mery from pulling down her pantyhose and removing her underwear. She further testified that she was afraid of him, and that because he was larger than she, she was unable to stop him. According to the prosecutrix, Mery held her hands over her head, removed his pants, and forced her to have intercourse with him. She testified that, following the attack, Rojas returned to the room, and she left to go back to the housekeeping department to clean up.

The prosecutrix stayed at the hotel during the rest of her shift but told no one about the incident at that time. She testified that when a friend picked her up from work, she told her what had happened. The friend called the prosecutrix's cousin, who then took the prosecutrix back to the Sheraton to report the incident. Following this, the prosecutrix went to the police to report that she had been raped.

Edward Forbes, a security guard at the Sheraton, testified that Mery later told him that he had sexual intercourse with the prosecutrix, and that, because she was afraid she might be pregnant, she was claiming that he raped her.

Mery testified on his own behalf. He related that he, Rojas, and the prosecutrix had gone into a guest room to rest. Mery testified that he and the prosecutrix laid down on different beds, while Rojas sat in a chair. He further testified that he fell asleep as he was watching a movie, and that when he awakened, Rojas was no longer in the room. Mery testified that he got up and touched the prosecutrix in an attempt to awaken her. He further testified that he then asked the prosecutrix if he could kiss her. When she did not respond, he kissed her and asked if he could lie down on the bed with her. Mery testified that again the prosecutrix did not respond, but after they kissed and hugged each other, she sighed and told him that it was "[s]weet."

Mery testified that when he asked the prosecutrix if she would make love to him, she did not give him a negative answer, nor did she try to resist his advances. Further, he testified that they each took off some of their clothes. Mery also testified that while attempting intercourse, he experienced premature ejaculation, and that, although his penis touched her vagina, he never penetrated her.

Mery testified that Rojas then radioed that he was on his way back to the room. Mery testified that upon hearing this, he and the prosecutrix got dressed. Shortly after Rojas' arrival, all three of them left the room. Mery further testified that he later told the police that he had an affair with the prosecutrix, but that it was not completed since he had experienced premature ejaculation.

Officer Theodore Dragon, of the Fairfax County Police Department, testified that when arrested, Mery stated that the prosecu-

trix filed a complaint because the sexual encounter was not enjoyable as "it was too short."

Upon presentation of all of the evidence, the trial court and counsel discussed the proffered jury instructions. Included in his requested instructions, Mery offered Instruction No. 2, which states: "Virginia law interposes consent as an absolute bar to a prosecution for rape when the alleged victim is over the age of consent." The trial court refused this instruction on the ground that the issue of consent was adequately covered in the instructions already granted.

Mery argues that the trial court erred in refusing his consent instruction since his defense was predicated on his assertion that all actions between him and the prosecutrix were consensual. In support of his argument, he cites *Bryant v. Commonwealth*, 216 Va. 390, 219 S.E.2d 669 (1975), where the Supreme Court held that it was error for the trial court to refuse to instruct the jury on consent since there was sufficient evidence to support such an instruction.

In response, the Commonwealth argues that in addition to the finding instruction, the trial court gave three other instructions which touched on the issue of consent. The first such instruction stated that the element of force, threat, or intimidation must be sufficient to overcome any unwillingness on the part of the prosecutrix. Another instruction given stated that the absence of resistance on the part of the prosecutrix may be considered to show that the act was not against her will. The third instruction dealing with this issue stated that the meaning of intimidation included overbearing the prosecutrix's will. The Commonwealth asserts that these instructions adequately instructed the jury on the issue of consent.

The Commonwealth also argues that *Bryant* does not control the outcome of the case before us because, in *Bryant*, consent was the defendant's sole defense. The Commonwealth asserts that since Mery argued both consent and lack of penetration, the failure to grant his instruction on consent did not have the same impact on his defense as it did in *Bryant*. Thus, the Commonwealth argues that given this difference in defenses, as well as the other instructions provided to the jury, the case before us is not governed by the holding in *Bryant*. We disagree.

In *Bryant*, the Supreme Court was confronted with a trial record where no jury instruction was given specifically dealing with the principle of consent. There was, however, sufficient evidence of consent by the prosecutrix to make this a jury issue. The Court held that an instruction on the defendant's sole defense of consent was crucial to his case, and therefore, the trial court's refusal to instruct the jury on this issue was reversible error. *Id.* at 392-93, 219 S.E.2d at 671-72.

█ We do not interpret *Bryant* as being predicated on the fact that consent was the defendant's sole defense. Rather, we believe the holding in *Bryant* was based on the Court's determination that the issue of consent was crucial to the defendant's case, and no other jury instruction specifically addressed it. As recently as its decision in *Jiminez v. Commonwealth*, 241 Va. 244, 402 S.E.2d 678 (1991), the Supreme Court relied on *Bryant* for the following proposition: "[W]hen a principle of law is vital to a defendant in a criminal case, the trial court has an affirmative duty properly to instruct a jury about the matter." *Id.* at 250, 402 S.E.2d at 681. *Jiminez* does not limit the trial court's duty in this regard to situations where the issue constitutes a defendant's sole defense or an element of the crime. Instead, we believe *Jiminez* articulates a guiding principle to be applied to the facts of each case.

In the case before us, none of the jury instructions cited by the Commonwealth specifically deals with the issue of consent. Rather, they address the subject only by inference. Those instructions specifically address the issues of force, resistance, and the overcoming of the prosecutrix's will. We find that their inferential treatment of the principle of consent did not adequately instruct the jury on a subject that was both vital to Mery's defense and sufficiently supported by the evidence to make it a jury issue. Although consent was not Mery's sole defense, his entire testimony and theory of the case was based on his assertion that the prosecutrix consented to all of the sexual activity which occurred between them that night.

█ Our decision here is not affected by the fact that Mery's proposed consent instruction was not correct as a matter of law. Mery's proposed Instruction No. 2 states: "Virginia law interposes consent as an absolute bar to a prosecution for rape when the alleged victim is over the age of consent." While the instruction should have stated that consent is a bar to conviction, rather than

prosecution, we find that the trial court was nevertheless obligated to correct it and give it to the jury under the particular circumstances of this case. That same requirement was imposed in *Bryant* where the Court cited the following language from *Whaley v. Commonwealth*, 214 Va. 353, 200 S.E.2d 556 (1973):

> We adhere to the rule that the trial court is not required to amend or correct an erroneous instruction, but the rule is subject to the limitation that when the principle of law is materially vital to a defendant in a criminal case, it is reversible error for the trial court to refuse a defective instruction instead of correcting it and giving it in the proper form. A jury should not be left in the dark on the subject.

*Id.* at 355-56, 200 S.E.2d at 558. In the case before us, since the principle of consent was materially vital to Mery's defense, we find that the trial court was obligated to correct the instruction and give it to the jury.

In conclusion, we find that since the jury instructions given in this case did not specifically address the principle of consent, and since consent was vital to Mery's defense and was supported by sufficient evidence to make it a jury issue, the trial court erred in refusing to instruct the jury on that principle. Accordingly, we reverse Mery's conviction and remand this cause for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*

Koontz, C.J., and Benton, J., concurred.