## Richmond

MICHAEL LOWELL MORSE

v.

COMMONWEALTH OF VIRIGNIA

No. 0726-92-2

Decided February 1, 1994

628

COUNSEL

John J. Trexler (Beddow, Marley, Burgess & Murphey, on brief), for appellant.

Virginia B. Theisen, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, J.**—Michael Lowell Morse (Morse) appeals his conviction by jury for marital sexual assault, Code § 18.2-67.2:1. Morse asserts that (1) the evidence was insufficient to sustain his conviction, (2) the trial court improperly admitted evidence of his prior sexual violence toward his wife, (3) the trial court erred in denying Morse's

tendered instruction defining "intimidation," and (4) the trial court erred in denying Morse's tendered instruction on consent. For the following reasons, we reverse Morse's conviction.

## I.

### FACTUAL BACKGROUND

Morse and Lenora Morse (Mrs. Morse) married on July 18, 1987. Over the course of the couple's marriage their relationship deteriorated. The couple rarely pursued activities together and did not communicate well. Unemployed at the time of the incident in question, Morse had worked as a police officer in Chesterfield County and at Virginia State University. Morse held a tenth-degree black belt in karate, and, on occasion, taught karate at Virginia State. Mrs. Morse worked as an engineer and held part-time positions as an aerobics instructor and sewing teacher. The couple resided in Chesterfield County.

Prior to trial, the Commonwealth's attorney advised the court that the Commonwealth would present evidence of past sexual behavior between Mrs. Morse and Morse. Outside the presence of the jury, Mrs. Morse testified concerning eight to twelve incidents during which Morse had acted violently toward her in demanding sexual intercourse. Morse objected to this testimony. Although conceding the relevance of such testimony generally to show the past history of the relationship, he argued that the testimony offered in this instance lacked specificity in detail and adequate proximity in time to the crime charged. The court overruled the objection and permitted the jury to hear this evidence.

In addition, Mrs. Morse testified and gave the following account of events that led to the criminal charge against Morse. On the night of the incident in question, Mrs. Morse went to bed at 11:30 p.m. after watching the television news. She laid down very close to the edge of the bed with her back to Morse. Morse told her that if she remained at the edge of the bed she would "fall off." He then flipped the mattress off the bed, causing Mrs. Morse to fall. Her head struck a nightstand and she sustained carpet burns on one knee.

Morse told Mrs. Morse that he wanted to have sexual intercourse that night or the next morning before she went to church. Mrs. Morse replied that she would not have relations with him and left the bedroom, intending to sleep on the living room couch. Morse followed Mrs. Morse into the living room and demanded that they have sexual

intercourse. She refused his demand "a couple of times." Morse then laid down on top of her. Mrs. Morse told Morse that she had to go to the bathroom, which he allowed her to do. While in the bathroom, she decided to "go on back and get it over with," reasoning that she could not resist Morse and fearing that friends of his on the police force would assist Morse in avoiding prosecution if she filed a complaint.

When Mrs. Morse emerged from the bathroom, Morse told her that she "was third in line to have [her] brains blown out." Mrs. Morse interpreted "third in line" as a reference to two persons her husband blamed for his employment difficulties. At one point, Morse remarked that Mrs. Morse acted like a female version of one of those persons. Although she knew Morse kept a gun in the house, Mrs. Morse did not think he would shoot her, saying, "[H]e would have probably had (sic) roughed me up a little bit . . . ."

When Mrs. Morse returned to the living room, she laid down on the couch and allowed Morse to have intercourse with her. The following morning, she attended church and afterwards went to Chippenham Hospital. Mrs. Morse reported the incident to a police officer called to the hospital by one of the examining nurses.

Morse testified in his defense and denied that he had intercourse with Mrs. Morse against her will by force or present threat of force. Although he conceded that she was not responsive to his sexual advances and had said that she was tired, he maintained that Mrs. Morse did not object to the intercourse on the night in question. Morse offered two instructions, one concerning the distinction between threat of force and intimidation and the other concerning the defense of consent. The trial court rejected both instructions, noting that the latter incorrectly stated the law regarding consent. Two instructions given referred to the determination of threat of force.

## II.

## SUFFICIENCY

Initially, we consider Morse's claim that the evidence was insufficient to sustain his conviction. "When considering the sufficiency of the evidence on appeal of a criminal conviction, we must view the evidence in the light most favorable to the Commonwealth and accord to the evidence all reasonable inferences fairly deducible therefrom. The jury's verdict will not be disturbed on appeal unless it is plainly wrong or without evidence to support it." *Traverso v. Commonwealth*, 6 Va.

App. 172, 176, 366 S.E.2d 719, 721 (1988) (citations omitted). "The weight which should be given to evidence and whether the testimony of a witness is credible are questions which the trier of fact must decide." *Bridgeman v. Commonwealth,* 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986).

Viewed in the light most favorable to the Commonwealth, the evidence supports a conclusion that Mrs. Morse did not consent to have sexual intercourse and that the act was accomplished by present threat of force by Morse. We cannot say that this conclusion, based upon the instruction given by the trial court, and the verdict that resulted were plainly wrong or without support in the evidence. Accordingly, we must look to Morse's additional points of appeal to determine if harmful error occurred in the course of presenting the evidence or in failing to fully instruct the jury on the applicable law. As each of the issues raised is likely to arise in any retrial of this case, we address each issue irrespective of the effect it has on the final disposition of this appeal.

### III.
### EVIDENCE OF PRIOR SEXUAL VIOLENCE

 As a general rule, evidence that shows or tends to show crimes or other bad acts committed by the accused is incompetent and inadmissible for the purpose of proving that the accused committed or likely committed the particular crime charged. *Kirkpatrick v. Commonwealth,* 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970). "[Similar crimes evidence] merely show[s] that [an accused] has the propensity to commit the crime [charged] and this inference has been held error because it reverses his presumption of innocence." *Spence v. Commonwealth,* 12 Va. App. 1040, 1045, 407 S.E.2d 916, 918 (1991) (citing *Lewis v. Commonwealth,* 225 Va. 497, 502, 303 S.E.2d 890, 893 (1983)).

 Well established exceptions to the general rule of exclusion of other bad acts evidence apply where the evidence is relevant to show some element of the crime charged. To be admissible as an exception, evidence of other bad acts must be relevant to an issue or element in the present case. *Sutphin v. Commonwealth,* 1 Va. App. 241, 245, 337 S.E.2d 897, 899 (1985). In *Sutphin,* we enumerated the most common issues and elements for which evidence of prior crimes and bad acts are potentially relevant:

(1) to prove motive to commit the crime charged; (2) to establish guilty knowledge or to negate good faith; (3) to negate the possibility of mistake or accident; *(4) to show the conduct and feeling of the accused toward his victim, or to establish their prior relations*; (5) to prove opportunity; (6) to prove identity of the accused as the one who committed the crime where the prior criminal acts are so distinctive as to indicate a *modus operandi*; or (7) to demonstrate a common scheme or plan where the other crime or crimes constitute a part of a general scheme of which the crime charged is a part.

*Id.* (emphasis added).

Morse's prior sexual violence falls within the exception allowing evidence of prior bad acts to show the conduct and feeling of the accused toward the victim and the prior relations between the parties to prove an element of the offense charged. *See Ryan v. Commonwealth,* 219 Va. 439, 447, 247 S.E.2d 698, 704 (1978). If believed by the jury, evidence that Morse had on numerous previous occasions acted violently toward Mrs. Morse in demanding sexual intercourse tends to prove that the intercourse in question was accomplished by conduct that was tantamount to a present threat of force by Morse against Mrs. Morse.

The evidence also tends to establish Mrs. Morse's motivation for submitting to Morse's demands. Whether Mrs. Morse submitted, in addition to her motivation, could also bear upon the defense of consent. Thus, the prior relations of the couple showed the victim's state of mind "as to why she did what she did." *See Scott v. Commonwealth,* 228 Va. 519, 527, 323 S.E.2d 572, 577 (1984) ("If the evidence of other conduct is connected with the present offense, or tends to prove any element or fact in issue at trial, it should be admitted"); *see also Satterfield v. Commonwealth,* 14 Va. App. 630, 635, 420 S.E.2d 228, 231 (1992) (*en banc*). Accordingly, it was not error for the trial court to admit evidence of the couple's prior sexual history.

## IV.

## DENIAL OF PROFFERED INSTRUCTION ON INTIMIDATION

■ A trial court should not give an instruction inapplicable to the facts of the case. *Stewart v. Commonwealth,* 10 Va. App. 563, 570, 394 S.E.2d 509, 513 (1990). Rather, the trial court should instruct the jury only on those theories of the case which find support in the evi-

dence. *Frye v. Commonwealth*, 231 Va. 370, 388, 345 S.E.2d 267, 280 (1986). The evidence relied on to support a proffered instruction must amount to "more than a scintilla." *Hatcher v. Commonwealth*, 218 Va. 811, 814, 241 S.E.2d 756, 758 (1978). It is a fundamental principle that "[a]lthough an instruction may correctly state the law, it should not be given if it is inapplicable to the facts in evidence . . . [and] might confuse or distract the jury." *King v. Commonwealth*, 2 Va. App. 708, 711, 347 S.E.2d 530, 531 (1986) (citation omitted).

It is undisputed that at the time of the incident in question Morse and Mrs. Morse were living together as man and wife. The Commonwealth does not contend that the act of sexual intercourse was accomplished by use of actual force nor would the record support such a contention. The dispute is whether the act was accomplished by a present threat of force, by intimidation or by consent. For the reasons that will become apparent, these facts control the applicability of the pertinent Code sections to this case and the resolution of this particular issue within the framework of those Code sections.

Code § 18.2-67.2:1 provides in pertinent part as follows:

A. An accused shall be guilty of marital sexual assault if (i) he or she engages in sexual intercourse . . . with his or her spouse . . ., and (ii) such act is accomplished against the spouse's will by force or present threat of force against the spouse . . . .

E. A violation of this section shall constitute a lesser, included offense of the respective violation set forth in [§] 18.2-61 B.

In contrast, Code § 18.2-61 provides that the crime of rape occurs where the act of sexual intercourse is accomplished against the victim's will "by force, threat or intimidation." As between spouses, Code § 18.2-61(B) specifically limits its application to where at the time of the offense "(i) the spouses were living separate and apart or (ii) the defendant caused serious physical injury to the spouse by use of force or violence."

■ "Statutes must be construed consistently with each other and so as to reasonably and logically effectuate their intended purpose." *Nelson v. County of Henrico*, 10 Va. App. 558, 561, 393 S.E.2d 644, 646 (1990); *see also ACB Trucking, Inc. v. Griffin*, 5 Va. App. 542, 547-48, 365 S.E.2d 334, 337-38 (1988). When so construed, we conclude that the legislature intended to limit the applicability of Code § 18.2-67.2:1 to those instances in which sexual intercourse between

spouses living together is accomplished against one spouse's will by force or threat of force and does not include such acts accomplished by intimidation (or consent).

Morse correctly asserts that Code § 18.2-61(B) expressly provides for the use of intimidation to accomplish marital rape where, at the time of the offense, the spouses are living separate and apart. On the other hand, Code § 18.2-67.2:1 (marital sexual assault) has no provision for sexual intercourse accomplished against the spouse's will by "intimidation." The term "intimidation" does not appear in Code § 18.2-67.2:1. Thus, neither the rape statute nor the marital sexual assault statute prohibits sexual intercourse accomplished against the will of a spouse by "intimidation," where at the time of the act the spouses are living together.

There is a clear distinction between the terms "threat of force" and "intimidation." Our Supreme Court explained that distinction and its significance when discussing an amendment to Code § 18.2-61 in *Sutton v. Commonwealth.*

> It is apparent that the legislative intent, in amending the statute to include a prohibition against sexual intercourse with a woman against her will by threat or intimidation, was to expand the parameters of rape. There is a difference between threat and intimidation. As used in the statute, threat means expression of an intention to do bodily harm. Intimidation may occur without threats. Intimidation, as used in the statute, means putting a victim in fear of bodily harm by exercising such domination and control of her as to overcome her mind and overbear her will. Intimidation may be caused by the imposition of psychological pressure on one who, under the circumstances, is vulnerable and susceptible to such pressure.

228 Va. 654, 663, 324 S.E.2d 665, 669-70 (1985).

█ Just as the amendment of Code § 18.2-61 effects an expansion of the rape law, the absence of similar language in Code § 18.2-67.2:1 implies a limitation on the methods of accomplishing the crime of marital sexual assault. When the absence of "intimidation" in Code § 18.2-67.2:1 is considered in light of the specific limitations of Code § 18.2-61(B), we conclude that the legislature intended to exclude from Code § 18.2-67.2:1 a prohibition against sexual intercourse accomplished by intimidation, where at the time of such act the spouses were living together.

We turn now to the specific issue of Morse's proffered instruction on intimidation. The language of that instruction was drawn from language found in the above quote from *Sutton* and provided as follows:

Threat of force means an expression of an intention to do bodily harm or to use force against the victim. Intimidation is not threat of force. Intimidation means putting a victim in fear of bodily harm by exercising such domination and control of her as to overcome her mind and overbear her will. Intimidation may be caused by the imposition of psychological pressure on one who, under the circumstances, is vulnerable and susceptible to such pressure.

Initially, we note the difficulty we have with this instruction, and probably the difficulty the trial court had with it. The proffered instruction addresses a term, "intimidation," that is not found in Code § 18.2-67.2:1 under which Morse was charged. Clearly, the better practice is to define adequately the term used in the statute, "threat of force."[1] Nevertheless, the facts of this case did not necessarily limit the trier of fact to the conclusion that Morse's actions constituted threats of force. As reasonable minds could differ on this issue, we conclude that there was "more than a scintilla" of evidence in support of Morse's contention that, if Mrs. Morse did not freely consent, she may merely have been intimidated into having intercourse, rather than having submitted to a present threat of force. Because sufficient evidence exists to present the issue of intimidation to the jury and because if accepted by the jury for that purpose, Mrs. Morse's submission merely as a result of intimidation would have been insufficient to support a conviction, Morse was entitled to an appropriate instruction consistent with his theory of the case.

We look then to the other instructions given by the trial court. Related to the definition of threat of force the trial court gave the following two instructions.

### Instruction No. 7

There must be evidence of some array or show of force sufficient to overcome resistance, but Lenora Morse is not required to resist to the utmost of her physical strength, if she reasonably be-

---

[1] For example, where appropriate an instruction defining the term "threat of force" could include explanatory language that the required threat of force is not shown merely by proof that the defendant exercised such dominion and control over the victim as to overcome her mind and overbear her will or used psychological pressure to do so.

lieves resistance would be useless and result in serious bodily injury to her.

In this connection, you may consider the time, place and relative physical strengths and evidence of Lenora Morse and the defendant, the whole situation as it confronted her and all the circumstances disclosed by the evidence.

Instruction No. 9

The element of threat of force required must have been sufficient to overcome any unwillingness on the part of Lenora Diane Mariner Morse to have sexual intercourse.

Neither of these instructions adequately defines the term "threat of force" to exclude submission to sexual intercourse by Mrs. Morse as a result of intimidation by Morse. Accordingly, Morse was erroneously denied his right to have an instruction given to the jury that encompassed his theory of the case. Although we do not approve the proffered instruction, we address the action the trial court should have taken in the following section of this opinion.

V.

DENIAL OF PROFFERED INSTRUCTION ON CONSENT

Morse proffered the following instruction on consent in the context of marital sexual assault, conceding that it had been hastily drafted: "If you believe from the evidence that the pattern of conduct between the complaining witness and the defendant was such that the defendant thought there was consent, then you must find the intercourse was consensual." The trial court correctly ruled that this instruction was a misstatement of law and refused the instruction.

It is a well established rule that under normal circumstances a trial court is under no obligation to amend or correct an instruction that contains a misstatement of law. However, "when the principle of law is materially vital to [the] defendant in a criminal case, it is reversible error for the trial court to refuse a defective instruction instead of correcting it and giving it in the proper form." *Whaley v. Commonwealth*, 214 Va. 353, 355-56, 200 S.E.2d 556, 558 (1973); *accord Bryant v. Commonwealth*, 216 Va. 390, 392-93, 219 S.E.2d 669, 671-72 (1975).

In *Mery v. Commonwealth*, the trial court refused a proffered instruction that correctly defined the defense of consent in a rape case. The trial judge stated that consent was addressed in the instructions

outlining the elements of the crime and rejected the separate instruction as needlessly repetitive. 12 Va. App. 821, 824, 407 S.E.2d 18, 20 (1991). Relying on *Whaley* and *Bryant,* we held that it was error not to give a separate instruction defining consent when "consent was vital to [the] defense and was supported by sufficient evidence to make it a jury issue." *Id.* at 826, 407 S.E.2d at 21.

Unlike the defendant in *Mery,* Morse did not proffer a correct instruction on the defense of consent. Nonetheless, in light of the Commonwealth's contention that the evidence of the couple's prior sexual history was relevant to show a lack of consent, it is clear that the defense of consent, tangentially addressed in the proffered erroneous instruction, was an issue in the case and was vital to Morse's defense.[2] Accordingly, combining the principle expressed in *Mery* with that found in *Bryant* and *Whaley,* we hold that a trial court is required to instruct the jury on the definition of consent where sufficient evidence exists to present that issue to the jury and it is clear that the defendant wishes the jury to be so instructed, even if the defendant's proffered instruction misstates the law.

Because the defense of consent was clearly an issue for the jury in this case and Morse attempted, albeit unartfully, to have the jury separately instructed on the meaning of consent, the trial court should have prepared its own instruction or required counsel to submit a new instruction that correctly defined the defense of consent. Similarly, the trial court should have prepared its own instruction or required counsel to submit an instruction that adequately defined "threat of force" in the context of the facts of this case.

Having determined that the trial court erroneously instructed the jury, it remains only to determine whether that error was harmful.

> In Virginia, non-constitutional error is harmless "[w]hen it *plainly appears* from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678 (emphasis added). "[A] fair trial on the merits and substantial justice" are not achieved if an error at trial has affected the verdict. Consequently, under Code § 8.01-678, a criminal conviction must be reversed unless "it plainly appears from the record and the evidence given at the

---

[2] As with the instruction on intimidation, we do not suggest that the evidence was overwhelming in support of Morse's position, only that there was clearly "more than a scintilla" of evidence to support giving an instruction.

trial that" the error did not affect the verdict. An error does not affect a verdict if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same.

*Lavinder v. Commonwealth*, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (*en banc*). Here, we cannot say that the failure to instruct the jury on two principles of law vital to Morse's theory of the case could not have affected the verdict. Accordingly, Morse's conviction is reversed and the case remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*

Benton, J., and Willis, J., concurred.