COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Kelsey and Haley
Argued at Chesapeake, Virginia


QUINCY JONES WALKER, S/K/A
 QUINCY JAMES WALKER

                                                        MEMORANDUM OPINION[*] BY
v.        Record No. 1456-04-1                      JUDGE ROBERT P. FRANK
                                                            OCTOBER 25, 2005

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
                        Frederick H. Creekmore, Judge

            Nathan A. Chapman (William B. Parkhurst; Law Office of
            William B. Parkhurst, P.C., on brief), for appellant.

            John H. McLees, Senior Assistant Attorney General (Judith Williams
            Jagdmann, Attorney General; Paul C. Galanides, Assistant Attorney
            General, on brief), for appellee.


        Quincy J. Walker, appellant, was convicted, in a bench trial, of marital rape, in violation of

Code § 18.2-61(B), and attempted marital sexual assault in violation of Code § 18.2-67.2:1.  On

appeal, he contends the trial court erred in (1) finding the evidence sufficient to show that appellant

and his wife lived separate and apart as required for a conviction for marital rape, (2) finding that

appellant and his wife lived together as required for a conviction of marital sexual assault, and

(3) finding that his wife revoked her implied consent to have marital intercourse.  For the reasons

stated, we affirm.

---
[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

It is well settled that "[o]n appeal, we review the evidence in the light most favorable to the party prevailing below, together with all reasonable inferences that may be drawn." Benton v. Commonwealth, 40 Va. App. 136, 139, 578 S.E.2d 74, 75 (2003).

So viewed, the evidence establishes that the Walkers were married in 1995 and have five children. At some point during the marriage, Mrs. Walker, a Lieutenant Junior Grade in the United States Navy, moved to Rhode Island to attend school. While in Rhode Island, appellant would occasionally visit Mrs. Walker and their children. Upon returning to Virginia in 2001, Mrs. Walker initially lived on base, and then moved into an apartment in Chesapeake with just her children. She testified at trial that appellant was living in Virginia Beach and that she and appellant were "separated" at that time. Mrs. Walker testified that she assumed sole responsibility for rent, utility bills, and food. Appellant did not have a key to her apartment. Although appellant would occasionally go to church with Mrs. Walker, and they would exchange Mother's and Father's Day gifts with each other, Mrs. Walker allowed these activities solely for the sake of their children.

Appellant opposed the separation and repeatedly attempted to reconcile with Mrs. Walker. Mrs. Walker testified that "every time he came over" he would try to repair the marriage. During October and November of 2001, they engaged in sexual relations on an occasional basis. Mrs. Walker lost twins in December 2001 and became very distraught. Although the couple continued to engage in sexual activity between January 2002 and March 2002, Mrs. Walker testified that it was always without her consent. She allowed appellant to stay overnight from time to time because of the children. During this time period, the Walkers discussed having another child, and Mrs. Walker became pregnant again after forced intercourse.

In the spring of 2002 she informed appellant that she did not want him sleeping at her home anymore.

Mrs. Walker testified that in the early morning of June 15, 2002, appellant woke her by ringing the doorbell at her apartment in Chesapeake. She had been asleep on the couch and answered the door wearing her pajamas. Appellant had just left work and stated that he had come by to see the children. He and Mrs. Walker sat on the couch and he immediately began trying to kiss her, telling her he wanted a reconciliation. She told him to stop, yet he continued to kiss her. He then grabbed her and "held [her] arms down and forced [her] to have sex." She testified that despite her telling him to "stop" and to "get off of me," appellant pulled down her pants, held down her arms, and forced her to have intercourse. He left the apartment later in the morning after feeding the children breakfast. Mrs. Walker did not notify the police.

Mrs. Walker testified that on June 26, 2002, appellant stopped by her apartment asking to borrow the lawn mower. Her children were eating dinner, and Mrs. Walker was ironing a skirt in preparation for church. She was wearing a top and a robe. She told appellant he could not borrow the mower, so he went inside to talk with the children. After she went into the bathroom to finish ironing, appellant came in, pushed her back into the bedroom, then back into the bathroom. He tried to close the door while taking down his pants. Mrs. Walker told him to "Stop. Stop." He pinned Mrs. Walker against the wall, pulled her panties down to her thighs, and put his penis on her vagina. Mrs. Walker yelled again for him to stop. The children ran to the bathroom in response, and appellant stopped. Mrs. Walker reported both incidents to the police the following day.

ANALYSIS

MARITAL RAPE

Appellant first contends the evidence is insufficient to support his rape conviction

because "the Walkers did not live separate and apart as required by statute."[1]  He argues that

Code § 18.2-61(B) requires "some ongoing, express, protracted, unequivocal demonstration or

behavior which would clearly indicate to the other spouse that this one spouse, does not want to

be involved with the other."  The Commonwealth responds that appellant misinterprets the

meaning of the language "separate and apart."

We agree with appellant that in order to convict an accused of marital rape pursuant to

Code § 18.2-61(B), the Commonwealth must show that at the time of the offense the couple was

living "separate and apart."  However, we disagree with appellant's application of the law in this

case.  Here, the evidence sufficiently proved that appellant was living separate and apart from his

wife and we affirm the conviction.

Appellant cites Weishaupt v. Commonwealth, 227 Va. 389, 315 S.E.2d 847 (1984), in

support of his argument.  Weishaupt holds that a wife can unilaterally revoke her implied consent

to marital sex where she has (1) made manifest her intent to terminate the marital relationship by

living separate and apart from her husband; (2) refrained from voluntary sexual intercourse with

her husband; and (3) in light of all the circumstances, conducted herself in a manner that

---

[1]Code § 18.2-61(B) in effect at the time provided:

> If any person has sexual intercourse with his or her spouse and
> such act is accomplished against the spouse's will by force, threat
> or intimidation of or against the spouse or another, he or she shall
> be guilty of rape.

> However, no person shall be found guilty under this subsection
> unless, at the time of the alleged offense, (i) the spouses were
> living separate and apart, or (ii) the defendant caused bodily injury
> to the spouse by the use of force or violence.

establishes a *de facto* end to the marriage.  Id. at 405, 315 S.E.2d at 855; see also Kizer v. Commonwealth, 228 Va. 256, 261-62, 321 S.E.2d 291, 294 (1984) ("[W]e cannot say that [wife's] subjective intent was manifested objectively to the husband, in view of the wife's vacillating conduct, so that he perceived, or reasonably should have perceived, that the marriage actually was ended.").

In Kizer, the Supreme Court reversed appellant's rape conviction.  The evidence there showed that while the couple physically lived in separate places, the wife was considering a reconciliation that prevented a finding that she had expressed her subjective intent to end the marriage.  Accordingly, the Supreme Court reversed the conviction because the wife had not "conducted herself in a manner that established an actual end to the marriage."  Kizer, 228 Va. at 261, 321 S.E.2d at 294.

Appellant's reliance on Weishaupt and Kizer is misplaced.  Subsequent to the Supreme Court's decisions in those cases, the General Assembly amended Code § 18.2-61(B) in 1986 to create marital rape as a separate offense.  The statute provides only that the intercourse be against the spouse's will while living "separate and apart."  The statute does not define "separate and apart," nor does it require proof of the spouse's subjective intent to end the marital relationship.  The statute merely criminalizes unwanted intercourse between spouses who are not living together.  Because the Weishaupt and Kizer element of intent is omitted from the statute, we need not determine whether Mrs. Walker's behavior led appellant to believe that the marital relationship was ongoing.  Instead, we only decide whether the evidence supports a finding that appellant and Mrs. Walker lived "separate and apart" as contemplated by the statute.

When considering the sufficiency of the evidence on appeal, we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.  See Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

"In so doing we must 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" Norman v. Commonwealth, 2 Va. App. 518, 520, 346 S.E.2d 44, 45 (1986) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)). The trial court's judgment will not be set aside unless plainly wrong or without evidence to support it. Josephs v. Commonwealth, 10 Va. App. 87, 99, 390 S.E.2d 491, 497 (1990) (*en banc*). Additionally:

> The credibility of a witness and the inferences to be drawn from proven facts are matters solely for the fact finder's determination. In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt.

Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998) (citation omitted).

So viewed, the evidence here clearly establishes that appellant and his wife lived separate and apart. Appellant had a home in Virginia Beach, and Mrs. Walker lived in Chesapeake. Appellant did not have a key to her apartment, nor did he contribute financially to her household. She did not pay any of the bills at his house. She testified they were "separated." Moreover, appellant's counsel conceded in argument before the trial court that "the clear, uncontroverted testimony of Ms. [] Walker is that they were not living together. They were living separate and apart."[2]

---

[2] While stipulating that the parties lived "separate and apart," counsel argued only that the Weishaupt holding prevents a finding of guilt for marital rape because Mrs. Walker did not conduct herself in a manner that established an actual end to the marriage. As previously discussed, Mrs. Walker's intent is irrelevant to a discussion of marital rape and Code § 18.2-61(B).

However, appellant argues that the facts here do not meet the "one-year period of separation" as required to obtain a divorce in the Commonwealth of Virginia.[3] We note that the requirements for divorce include living "separate and apart *without cohabitation*," (emphasis added), whereas Code § 18.2-61(B) requires only that the spouses live "separate and apart."

"'Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed.'" Barr v. Town & Country Props., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990) (quoting Watkins v. Hall, 161 Va. 924, 930, 172 S.E. 445, 447 (1934)).

We find no merit to appellant's argument. The language of Code § 18.2-61(B) is clear that the legislature did not intend for "separate and apart" to include the requirement that the parties refrain from any cohabitation, or that the period of separation be without interruption. Had the legislature intended such an interpretation, it would have included such language in the marital rape statute.

We therefore affirm this conviction.[4]

---

[3] Code § 20-91(A) provides the following grounds for divorce from the bond of matrimony:

> (9) (a) On the application of either party if and when the husband and wife have lived separate and apart without any cohabitation and without interruption for one year. In any case where the parties have entered into a separation agreement and there are no minor children either born of the parties, born of either party and adopted by the other or adopted by both parties, a divorce may be decreed on application if and when the husband and wife have lived separately and apart without cohabitation and without interruption for six months.

[4] We note that appellant does not challenge that he had intercourse with his wife against her will.

MARITAL SEXUAL ASSAULT

Appellant next challenges the trial court's ruling that a conviction for marital sexual assault does not require a showing that the parties are living together. Citing Morse v. Commonwealth, 17 Va. App. 627, 440 S.E.2d 145 (1994), appellant argues that because he and his wife were separated, he cannot be convicted of marital sexual assault.

At the time of the offense in 2002, Code § 18.2-67.2:1 stated:

> A. An accused shall be guilty of marital sexual assault if (i) he or she engages in sexual intercourse . . . with his or her spouse . . . and (ii) such act is accomplished against the spouse's will by force or a present threat of force or intimidation of or against the spouse or another person.

In Morse, the evidence was uncontested that the couple lived together as husband and wife. Morse, 17 Va. App. at 633, 440 S.E.2d at 149. Mrs. Morse testified that she initially refused her husband's demand for intercourse. This Court found that the evidence was sufficient to prove that Mrs. Morse ultimately submitted to her husband's demand after he made a "present threat of force." Id. at 635, 440 S.E.2d at 150. However, the statute at that time did not criminalize intercourse by "intimidation" and the issue in Morse was whether the defendant was entitled to a jury instruction that distinguished "intimidation" from "threat of force." The Court, in agreeing with Morse, wrote, "we conclude that the legislature intended to limit the applicability of Code § 18.2-67.2:1 to those instances in which sexual intercourse between spouses *living together* is accomplished against one spouse's will by force or threat of force and does not include such acts accomplished by intimidation (or consent)." Id. at 633-34, 440 S.E.2d at 149 (emphasis added).

The focus of Morse was whether the statute prohibited intercourse by "intimidation." Simply because the particular facts of Morse included spouses who were sharing one residence,

the Court's discussion of the intimidation issue included the excess language of "living together." However, the holding in Morse would remain intact even if the parties' living arrangements were to change. A review of the intimidation issue does not fail if the "living together" language is omitted from the analysis. Put differently, whether the parties are living together or apart is irrelevant to the holding of Morse. Thus, appellant's argument that Morse introduces an additional element of proof to Code § 18.2-67.2:1 is without merit.

In addition, the plain language of Code § 18.2-67.2:1 does not include the language as to the living arrangements of the victim and the accused. In comparison, Code § 18.2-61(B) does require that the parties live "separate and apart." If the legislature intended to criminalize the behavior outlined in Code § 18.2-67.2:1 only between spouses who share the same marital home, it would have used the phrase "living together" in the statute, just as it used "living separate and apart" in the marital rape statute.

The Virginia Supreme Court has long held that "[w]hen analyzing a statute, we must assume that 'the legislature chose, with care, the words it used . . . and we are bound by those words as we interpret the statute.'" City of Va. Beach v. ESG Enters., Inc., 243 Va. 149, 153, 413 S.E.2d 642, 644 (1992) (quoting Barr, 240 Va. at 295, 396 S.E.2d at 674). "[I]t is the duty of the courts to give effect, if possible, to every word of the written law." Moyer v. Commonwealth, 33 Va. App. 8, 35, 531 S.E.2d 580, 593 (2000) (*en banc*).

To ensure that the term "living separate and apart" has any meaning in the marital rape statute, we must assume that its omission from the marital sexual assault statute is intentional. Thus, the inclusive language "living separate and apart" in the marital rape statute, but its omission from the marital sexual assault statute, compels us to hold that "living together" is not an element of Code § 18.2-67.2:1 as it existed in 2002. We find that the Commonwealth was not

required to prove that the Walkers were living together at the time the attempted marital sexual assault occurred. We therefore affirm that conviction.

## WITHDRAWAL OF IMPLIED CONSENT

Finally, appellant contends that his convictions cannot be sustained because Mrs. Walker did not unequivocally express her intentions to terminate the marriage. As previously stated, the General Assembly rejected this concept when it enacted Code § 18.2-61(B) in 1986 and refused to require proof of a spouse's express intent to end the relationship in order to sustain convictions for marital rape and marital sexual assault. We find that the Commonwealth was not required to show that Mrs. Walker communicated to appellant an express and unequivocal desire to terminate her marriage.

## CONCLUSION

For the foregoing reasons, the trial court did not err in finding the evidence sufficient to sustain convictions for marital rape and attempted marital sexual assault. Accordingly, the convictions are affirmed.

Affirmed.