COURT OF APPEALS OF VIRGINIA

Present:    Judges Humphreys, Kelsey and Petty
Argued by teleconference


MATTHEW DAVID DETZLER

                                                    MEMORANDUM OPINION* BY
v.         Record No. 1779-08-4                     JUDGE ROBERT J. HUMPHREYS
                                                         APRIL 6, 2010
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                              William T. Newman, Jr., Judge[1]

             Matthew David Detzler, *pro se* (Calvin Steinmetz; Law Offices of
             Calvin Steinmetz, on briefs), for appellant.[2]

             Erin M. Kulpa, Assistant Attorney General (William C. Mims,
             Attorney General, on brief), for appellee.


       Matthew David Detzler ("Detzler") appeals his convictions for using electronic means to

solicit sex with a minor (two counts), in violation of Code § 18.2-374.3(B), and his convictions for

attempted indecent liberties (two counts), in violation of Code § 18.2-370.  Detzler makes two

principal arguments on appeal.  First, Detzler contends that the trial court abused its discretion in

allowing the Commonwealth to introduce evidence of prior bad acts.  Second, Detzler argues that

the circuit court abused its discretion in refusing to allow him to present expert testimony

concerning Internet chat rooms, Internet behavior, Internet sex, role-playing, grooming, and

fantasies on the Internet.  For the following reasons, we affirm all of Detzler's convictions.

_____

       * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

       [1] The Honorable Benjamin N. A. Kendrick presided over the motion *in limine*.

       [2] Detzler dismissed his counsel prior to oral argument, but after the filing of his opening
brief.

As the parties are fully conversant with the record in this case, and because this memorandum opinion carries no precedential value, we recite only those facts and incidents of the proceedings as are necessary to the parties' understanding of this appeal. We view those facts "'in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Caison v. Commonwealth, 52 Va. App. 423, 428, 663 S.E.2d 553, 555 (2008) (quoting Zoretic v. Commonwealth, 13 Va. App. 241, 242, 409 S.E.2d 832, 833 (1991)).

"'The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion.'" Bell v. Commonwealth, 49 Va. App. 570, 576, 643 S.E.2d 497, 500 (2007) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988)). "However, '[a] trial court has no discretion to admit clearly inadmissible evidence because admissibility of evidence depends not upon the discretion of the court but upon sound legal principles.'" Commonwealth v. Wynn, 277 Va. 92, 98, 671 S.E.2d 137, 139 (2009) (quoting Norfolk & Western Ry. Co. v. Puryear, 250 Va. 559, 563, 463 S.E.2d 442, 444 (1995)).

## I. Evidence of Other Crimes or Bad Acts

Detzler argues that the trial court abused its discretion in admitting evidence of his prior sexual relationship with C. Smith ("Smith") in Washington, D.C. Detzler makes four distinct arguments as to why the admission of this evidence was improper. First, Detzler argues that his actions with Smith were legal in the District of Columbia at the time and thus did not constitute proper other crimes or bad acts evidence.[3] Second, Detzler contends that his relationship with

---

[3] Contrary to his contention, Detzler's relationship with Smith arguably violated several federal laws. Regardless, the issue in this case is not whether Detzler's relationship with Smith constituted a separate criminal offense, but whether evidence of that relationship is relevant to prove elements of the instant offenses, as discussed more fully below. See Ortiz v. Commonwealth, 276 Va. 705, 714, 667 S.E.2d 751, 757 (2008).

Smith was "substantially separate and unique" from his relationship with Brooke,[4] and therefore, those activities were not relevant to prove intent, knowledge or motive. Third, Detzler claims that, since his identity was not at issue at trial, the evidence of his relationship with Smith was offered only to show a propensity to commit the offense. Finally, Detzler contends that the prejudice he suffered as a result of the admission of this evidence outweighed any probative value. We disagree with all of Detzler's contentions.

Generally speaking, "evidence that shows or tends to show crimes or other bad acts committed by the accused is incompetent and inadmissible for the purpose of proving that the accused committed or likely committed the particular crime charged." Morse v. Commonwealth, 17 Va. App. 627, 631, 440 S.E.2d 145, 148 (1994). That said, "[w]ell established exceptions to the general rule of exclusion of other bad acts evidence apply where the evidence is relevant to show some element of the crime charged." Id. This Court has previously held that evidence of a defendant's other crimes or bad acts may be admissible when offered:

> "(1) to prove motive to commit the crime charged; (2) to establish guilty knowledge or to negate good faith; (3) to negate the possibility of mistake or accident; (4) to show the conduct and feeling of the accused toward his victim, or to establish their prior relations; (5) to prove opportunity; (6) to prove identity of the accused as the one who committed the crime where the prior criminal acts are so distinctive as to indicate a modus operandi; or (7) to demonstrate a common scheme or plan where the other crime or crimes constitute a part of a general scheme of which the crime charged is a part."

Reynolds v. Commonwealth, 24 Va. App. 220, 224, 481 S.E.2d 479, 481 (1997) (quoting Lockhart v. Commonwealth, 18 Va. App. 254, 258-59, 443 S.E.2d 428, 429 (1994)). Evidence of other

---

[4] On June 28, 2006, Detzler entered a chat room designed for adults living in and around Washington, D.C. In the chat room, Detzler contacted "Brooke Angelo." Brooke identified herself as a thirteen-year-old female and entered the chat room under the screen name "dreamin2cheer." In fact, Brooke was a persona created by Officer Chris Feltman ("Officer Feltman") of the Arlington County Police Department Special Victims Unit. Officer Feltman received special training in the investigation of Internet crimes against children.

crimes or bad acts is also admissible to show intent or "any other relevant element of the offense on trial." Ortiz v. Commonwealth, 276 Va. 705, 714, 667 S.E.2d 751, 757 (2008).

Detzler was charged with violations of Code § 18.2-374.3(B) and Code § 18.2-370. As the plain language of each section makes clear, the defendant's knowledge and intent are elements of both offenses.

The version of Code § 18.2-374.3(B) under which Detzler was convicted provides:

> It shall be unlawful for any person 18 years of age or older to use a communications system, including but not limited to computers or computer networks or bulletin boards, or any other electronic means, for the purposes of soliciting any person *he knows or has reason to believe is a child less than 18 years of age* for . . . (iv) any activity in violation of subsection A of § 18.2-370. As used in this subsection, "use a communications system" means making personal contact or direct contact through any agent or agency, any print medium, the United States mail, any common carrier or communication common carrier, any electronic communications system, or any telecommunications, wire, computer, or radio communications system.

(Emphasis added).[5]

Code § 18.2-370 provides, in pertinent part:

> A. Any person 18 years of age or over, who, *with lascivious intent*, *knowingly and intentionally commits any of the following acts with any child under the age of 15 years* is guilty of a Class 5 felony:
>
> > (1) Expose his or her sexual or genital parts to any child to whom such person is not legally married or propose that any such child expose his or her sexual or genital parts to such person; or

---

[5] The current version of Code § 18.2-374.3(B) provides:

> It shall be unlawful for any person to use a communications system, including but not limited to computers or computer networks or bulletin boards, or any other electronic means for the purposes of procuring or promoting the use of a minor for any activity in violation of § 18.2-370 or § 18.2-374.1.

- 4 -

(2) [Repealed.]

(3) Propose that any such child feel or fondle the sexual or genital parts of such person or propose that such person feel or fondle the sexual or genital parts of any such child; or

(4) Propose to such child the performance of an act of sexual intercourse or any act constituting an offense under § 18.2-361; or

(5) Entice, allure, persuade, or invite any such child to enter any vehicle, room, house, or other place, for any of the purposes set forth in the preceding subdivisions of this section.

(Emphasis added).

"The simple act of proposing or inviting constitutes the completed crime [of indecent liberties] if the offender is over the age of 18, *the act is done with lascivious intent* and *the victim is under the age of* [*15*]." Hix v. Commonwealth, 270 Va. 335, 347, 619 S.E.2d 80, 87 (2005) (emphasis added). Similarly, in order to sustain a conviction under Code § 18.2-374.3(B), the Commonwealth must prove that the defendant knew or had reason to believe that the person he solicited was a minor. See Podracky v. Commonwealth, 52 Va. App. 130, 140, 662 S.E.2d 81, 86 (2008) (noting that "[t]he statute applies only to an adult who uses a communications system 'for the purposes of soliciting any person he knows or has reason to believe is a minor'"). As Hix and Podracky demonstrate, Detzler's knowledge of Brooke's age was an essential element of each offense that the Commonwealth was required to prove beyond a reasonable doubt, as was his intent.

In this case, the Commonwealth sought to introduce evidence of Detzler's prior relationship with Smith to prove: (1) that Detzler knew Brooke was under fifteen years of age, (2) that Detzler acted with the specific intent to commit the underlying crime of indecent liberties,[6] and (3) Detzler's identity as the perpetrator. Contrary to Detzler's contention, his relationship with Smith

---

[6] To constitute an attempt to commit a crime, an act must be done with the specific intent to commit that particular crime. See Thacker v. Commonwealth, 134 Va. 767, 114 S.E. 504 (1922).

- 5 -

was highly relevant to all of these issues. Like Brooke, Detzler met Smith in a chat room designed for adults. Like Brooke, Smith told Detzler that she was a minor soon after meeting him. In these conversations, Detzler expressed his desire to teach both Brooke and Smith how to perform certain sexual acts. Detzler also sent Brooke and Smith videos of himself masturbating.

Perhaps most significantly, Detzler introduced both Brooke and Smith to his alternate persona "Annie." Detzler claimed that Annie was an eighteen-year-old student with whom he had had a prior sexual relationship. Annie encouraged both Brooke and Smith to have a sexual relationship with Detzler. Annie stated that Detzler was a "good guy" and a "war hero." Annie explained that she was sexually inexperienced prior to meeting Detzler, but Detzler was a good teacher and put her at ease.[7]

On two separate occasions, Smith met Detzler at his office building where they engaged in certain sexual acts. Detzler told Smith that "he liked the fact that [Smith] was a lot younger than most of the girls he had been with." Detzler's relationship with Smith demonstrated not only his knowledge that minors were present in the adult chat rooms, but also his intent to engage in sexual acts with Brooke, just as he had done with Smith. This evidence also established Detzler's identity as the perpetrator. Although Detzler maintains that "identity was not in dispute" at trial, the Commonwealth was still required to prove Detzler's identity as the perpetrator of these offenses beyond a reasonable doubt. The many similarities that exist between Detzler's conversations with Smith and his conversations with Brooke do just that, especially Detzler's use of the "Annie" persona. Accordingly, we hold that the evidence of Detzler's relationship with Smith falls within the "[w]ell established exceptions to the general rule of exclusion of other bad acts evidence," as it

---

[7] At trial, Officer Feltman testified that be believed Detzler used Annie to gain his victim's trust. Officer Feltman testified that this type of behavior is referred to as "grooming."

was "relevant to show some element of the crime[s] charged."[8] Morse, 17 Va. App. at 631, 440 S.E.2d at 148.

Finally, Detzler contends that, even if evidence of his relationship with Smith constitutes proper other crimes or bad acts evidence, the probative value of such evidence is outweighed by its prejudicial effect. Again, we disagree.

Detzler is correct in his assertion that other crimes or bad acts evidence "must meet an additional requirement: its legitimate probative value must exceed its incidental prejudice to the defendant." Ortiz, 276 Va. at 715, 667 S.E.2d at 757. However, "'[t]he responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court. The exercise of that discretion will not be disturbed on appeal in the absence of a clear abuse.'" Id. at 715, 667 S.E.2d at 757-58 (quoting Spencer v. Commonwealth, 240 Va. 78, 90, 393 S.E.2d 609, 617 (1990)).[9]

After reviewing the record in this case, we cannot say that the trial court abused its discretion in admitting evidence of Detzler's relationship with Smith. This evidence had legitimate probative value in that it illustrated Detzler's knowledge that the victim was under fifteen years of age. In addition, this evidence established both Detzler's identity as the perpetrator and his specific intent to commit the underlying crime of indecent liberties. Furthermore, the trial court specifically instructed the jury to consider this evidence only as relevant to Detzler's intent, knowledge or

---

[8] Furthermore, throughout the trial, Detzler maintained that he believed Brooke was an adult female "role-playing" as a thirteen-year-old girl. Though the Commonwealth did not offer it for this purpose, evidence of Detzler's relationship with Smith would have been highly relevant to rebut his theory of the case.

[9] During the motion *in limine*, Detzler argued that any probative value of his relationship with Smith was "fully outweighed and totally outweighed by the prejudice" that he would suffer. After hearing argument from both Detzler and the Commonwealth, the trial court admitted the evidence. Although the trial court did not make an explicit finding that the probative value of this evidence outweighed any incidental prejudice to Detzler, we can infer that such a finding was implicit in its ruling.

identity, thus dissipating its incidental prejudice to Detzler. See United States v. Hadaway, 681 F.2d 214, 219 (4th Cir. 1982) ("Any such [prejudicial] impact of the evidence was largely dissipated by the court's repeated instructions to the jury to consider the evidence only as relevant to intent, knowledge, motive, plan and preparation with regard to the charged crime."). That is because the jury is "presumed to follow prompt, explicit, and curative instructions." Beavers v. Commonwealth, 245 Va. 268, 280, 427 S.E.2d 411, 420 (1993). Accordingly, the trial court did not abuse its discretion in admitting evidence of Detzler's relationship with Smith.

## II. Expert Testimony

Detzler further contends that the trial court abused its discretion in not allowing him to present expert testimony from Elizabeth Griffin ("Griffin"), concerning Internet chat rooms, Internet behavior, Internet sex, role-playing, grooming, and fantasies on the Internet. Again, we disagree.

"'The admission of expert testimony is committed to the sound discretion of the trial judge, and we will reverse a trial court's decision only where that court has abused its discretion.'" Utz v. Commonwealth, 28 Va. App. 411, 424, 505 S.E.2d 380, 386 (1998) (quoting Brown v. Corbin, 244 Va. 528, 531, 423 S.E.2d 176, 178 (1992)). "'It is settled law in Virginia that expert testimony is *inadmissible* on matters of common knowledge *or those as to which the jury are as competent to form an intelligent and accurate opinion as is the witness*.'" Charles E. Friend, The Law of Evidence in Virginia § 17-14(a), at 662 (6th ed. 2003) (quoting Grasty v. Tanner, 206 Va. 723, 726, 146 S.E.2d 252, 254 (1966)). However, it is for the trial court to "determine whether the subject matter of the testimony is beyond a lay person's common knowledge and whether it will assist the trier of fact in understanding the evidence or in determining a fact in issue." Utz, 28 Va. App. at 423, 505 S.E.2d at 386.

Here, the Commonwealth made a motion to exclude the expert testimony of Griffin. Detzler proffered that Griffin would testify "that it is not abnormal for an adult heterosexual

male to have any type of sexual attraction to post-pubescent [] 16- and 17-year-olds." In granting the Commonwealth's motion to exclude Griffin's testimony, the trial court specifically found that the subject matter of the trial testimony was "within the knowledge of the average juror" and therefore, did not require expert testimony. After examining the record in this case, we cannot say that the trial court abused its discretion in so finding. Contrary to Detzler's contention, Officer Feltman was not "presented to the jury as an expert." Though Officer Feltman testified on "grooming," he was never offered as an expert on the topic. Simply put, nothing in the record of this case demonstrates that these topics were beyond the knowledge of the average juror, as the trial court explicitly stated in its ruling. Thus, we hold that the trial court did not abuse its discretion in refusing to allow Detzler to present expert testimony in this case.

Affirmed.